IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 20-cv-1651-CMA-KLM

TONYA MCKINNEY,

    Plaintiff,

v.

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY,

    Defendant.

_____

### RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

This matter is before the Court on Defendant's **Partial Motion to Dismiss for Failure to State a Claim** [#28][1] (the "Motion"). The Court has reviewed the Motion, the Response [#37], the Reply [#40], Plaintiff's Notice of Withdrawal of Two Incorrect Statements in her Response [#41] ("Notice of Withdrawal"), the Surreply [#45], Plaintiff's Notice of Supplemental Information [#48], Defendant's Response [#49] thereto, the entire case file and the applicable law, and is sufficiently advised in the premises.[2] For the reasons set forth below, the court respectfully **RECOMMENDS** that the Motion [#28] be **GRANTED**.

---

[1] "[#28]" is an example of the convention the Court uses to identify the docket number assigned to a specific paper by the Court's case management and electronic case filing system (CM/ECF). This convention is used throughout this Recommendation.

[2] The Motion [#28] has been referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1) and D.C.COLO.LCivR 72.  See [#30].

1

## I. Background[3]

Plaintiff is an individual and resident of the State of Colorado. *Am. Compl.* [#19] ¶ 1. Defendant State Farm Mutual Insurance Corporation ("State Farm") is a corporation conducting insurance business in the State of Colorado. *Id.* ¶ 2. This matter arises from claims made by Plaintiff under an insurance policy (the "Policy") issued by State Farm to Plaintiff. *See id.* ¶ 17.

On March 9, 2019, a vehicle driven by Ashley Johnson rear-ended a vehicle driven by Tommy Lujan, which in turn rear-ended a vehicle Plaintiff was in, injuring her. *Am. Compl.* [#19] ¶¶ 5, 7, 9. Ms. Johnson was cited for careless driving. *Id.* ¶ 38. At the time of the collision, Ms. Johnson was insured under an automobile insurance policy issued by Geico with liability limits of $25,000 per person and $50,000 per incident. With State Farm's consent, Geico timely paid its policy limits to Plaintiff in compensation for her injuries. *Id.* ¶ 15. Ms. Johnson was underinsured. *Id.* ¶ 6. Plaintiff was insured under State Farm's Policy for underinsured motorist ("UIM") benefits, with coverage limits of $50,000 per person and $100,000 per incident. *Id.* ¶¶ 16, 17. Plaintiff timely notified State Farm of her UIM claim and asked Defendant to pay her these benefits as owed under the terms of the Policy. *Id.* ¶¶ 18, 20.

Plaintiff provided State Farm medical records and medical bills documenting her injuries, damages, and losses, including approximately $15,000 in medical expenses. *Am. Compl.* [#19] ¶ 19. State Farm then "made multiple 'offers' to 'settle'" Plaintiff's

---

[3] For the purposes of resolving the Motion [#28], the Court accepts as true all well-pled, as opposed to conclusory, allegations made in Plaintiff's Complaint [#19]. *See Shero v. City of Grove, Okla.*, 510 F.3d 1196, 1200 (10th Cir. 2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

claims, extending an initial offer of $2,500 and ultimately providing its highest "offer" of $6,844 in January 2019. *Id.* ¶ 21. In communicating each of these "offers" Plaintiff alleges that State Farm "attempted to elicit a release of [its] further liability" and intended "that payment of any monies to Ms. McKinney [would] be 'inclusive of all damages, known and unknown.'" *Id.* ¶¶ 21-23.

After the offer of $6,844, Plaintiff "repeatedly made clear that she would agree to State Farm's payment of that amount of money to her, but also that she did not agree to sign a release." *Am. Compl.* [#19] ¶ 24. In March and April 2020, Plaintiff requested that State Farm tender payment in the amount of $6,844 and asked that if some part of the claim was disputed, that State Farm "promptly provide a reasonable explanation for the basis of its compromise settlement." *Id.* ¶¶ 26-27. Plaintiff also stated that "[w]e don't think it's unreasonable to expect State Farm to follow the law so we request that State Farm immediately tender the $6,844.00 it is withholding from Ms. McKinney and continue to evaluate and investigate the claim." *Id.* ¶ 28. State Farm did not pay and instead, according to Plaintiff, "repeatedly attempted to extort a release out of Ms. McKinney." *Id.* ¶ 31.

On March 25, State Farm asked Plaintiff to advise if "we are at an impasse" and to provide "a counter demand so that we may continue to discuss settlement of the claim and resolution." *Am. Compl.* [#19] ¶ 29. On April 23, 2020, after Plaintiff continued to demand the $6,844 payment, State Farm sent a letter enclosing payment in the amount of $2,500 stating, "[o]ur efforts to resolve this claim through negotiation were not successful and appear to have reached an impasse. Under these circumstances we are advancing the amount of our initial offer." *Id.* ¶ 32. State Farm also stated that "[t]his

3

payment is made in advance without prejudicing your right to receive a higher amount in the future through continuing negotiation or alternative means of resolution." *Motion,* Ex. A. at 6.[4]

Plaintiff alleges that State Farm's "offered" amount of $6,844 is within the range of value State Farm assigned to Plaintiff's claim for UIM benefits, i.e., that State Farm agrees that Plaintiff's claim is worth at least $6,844. *Am. Compl.* [#19] ¶ 3. Plaintiff further alleges that there is no basis in the Policy or Colorado law for State Farm to requires its own insured to sign a release in order to receive payment of UIM benefits. *Am. Compl.* [#19] ¶ 35. Additionally, Plaintiff alleges that in failing to pay her the full amount of its own evaluation of $6,844 and delaying payment of the $2500, State Farm failed to adequately investigate Plaintiff's claim and pay additional benefits owed. *Id.* ¶ 36.

Plaintiff asserts three claims against State Farm: (1) breach of contract; (2) statutory unreasonable delay or denial under Colo. Rev. Stat. § 10–3–116; and (3) common law bad faith, *see id.* ¶¶ 57-62. In the present Motion [#28], State Farm seeks dismissal of the second and third claims pursuant to Fed. R. Civ. P. 12(b)(6).

## II.  Standard of Review

The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test "the sufficiency of the allegations within the four corners of the complaint after taking those

---

[4] State Farm attaches as Exhibit A to its Motion [#28] copies of the letters it sent to Plaintiff. While the sufficiency of a complaint must generally rest on its contents alone in connection with a Rule 12(b)(6) motion, the Court may consider documents that are referred to in the complaint if they are central to the claims and the parties do not dispute the documents' authenticity. *Gee v. Pacheco*, 627 F.3d 1178, 1186 (10th Cir. 2010). State Farm's attached letters are referenced in the Amended Complaint [#19] ¶¶ 21-34, appear to be central to the claims, and no party is disputing their authenticity. Thus, the Court will consider these documents in resolving the Motion [#28].

allegations as true." *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994); Fed. R. Civ. P. 12(b)(6) (stating that a complaint may be dismissed for "failure to state a claim upon which relief can be granted").  "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Sutton v. Utah State Sch. For the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999) (citation omitted).  To withstand a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain enough allegations of fact to state a claim for relief that is plausible on its face." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Shero v. City of Grove, Okla.*, 510 F.3d 1196, 1200 (10th Cir. 2007) ("The complaint must plead sufficient facts, taken as true, to provide 'plausible grounds' that discovery will reveal evidence to support the plaintiff's allegations." (quoting *Twombly*, 550 U.W. at 570)).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do.  Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement." *Id.* (brackets in original; internal quotation marks omitted).

To survive a motion to dismiss pursuant to Rule 12(b)(6), the factual allegations in the complaint "must be enough to raise a right to relief above the speculative level." *Christy Sports, LLC v. Deer Valley Resort Co.*, 555 F.3d 1188, 1191 (10th Cir. 2009).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere

5

possibility of misconduct," a factual allegation has been stated, "but it has not show[n] [ ] that the pleader is entitled to relief," as required by Fed. R. Civ. P. 8(a).  *Iqbal*, 556 U.S. at 679 (second brackets added; citation and internal quotation marks omitted).

### III.  Analysis

State Farm argues that Plaintiff has failed to state a claim with respect to both her statutory bad faith claim of unreasonable delay or denial and her common law bad faith claim.  *Motion* [#28] at 3-11.  The Court first addresses the legal framework for Plaintiff's claims and then turns to the argument that Plaintiff's allegations that State Farm's conduct was unreasonable as required to state a bad faith claim are not plausible as a matter of law.

**A.     Legal Framework**[5]

The requirements of a common law bad faith claim under Colorado law are heightened in comparison to those of a statutory bad faith claim.  Both common law and statutory bad faith claims require a showing of unreasonable conduct.  *Trujillo v. State Farm Mut. Auto. Ins. Co.*, No. 18-cv-0410-WJM-NRN, 2019 WL 3996882, at *8 (D. Colo. Aug. 23, 2019) (citing *Goodson v. Am. Standard. Ins. Co. of Wisc.*, 89 P.3d 409, 414 (Colo. 2004)).  However, a common law insurance bad faith claim requires the insured to sufficiently allege both that the insurer acted unreasonably under the circumstances *and* that the insurer knowingly or recklessly disregarded the validity of the insured's claim, while "the only element at issue in a statutory claim is whether an insurer denied [or delayed] benefits without a reasonable basis."  *Fisher v. State Farm Mut. Auto. Ins. Co.*,

---

[5] Because the Court's jurisdiction in this lawsuit is based on diversity of citizenship pursuant to 28 U.S.C. § 1332(a), the Court applies federal procedural law and Colorado substantive law.  *See Am. Compl.* [#19] ¶ 3; *4 Essex Ins. Co. v. Vincent*, 52 F.3d 894, 896 (10th Cir. 1995); *Trierweiler v. Croxton & Trench Holding Corp*, 90 F.3d 1523, 1539 (10th Cir. 1996).

419 P.3d 985, 990 (Colo. App. 2015) (*Fisher I*) (citations omitted), *aff'd State Farm Mut. Auto. Ins. Co. v. Fisher*, 418 P.3d 501, 506 (Colo. 2018) (*Fisher II*).  Here, Defendant's Motion [#28] is premised on whether Plaintiffs have sufficiently alleged the common element of these two claims, i.e., whether Defendant engaged in unreasonable conduct. *Motion* [#28] at 3-11.

Plaintiff is asserting a first party claim, i.e., she is suing her own insurer for UIM benefits to which she is directly entitled under the terms of the insurance policy.  *Bucholz v. Safeco Ins. Co. of Am.*, 773 P.2d 590, 593 (Colo. App. 1988).[6]  "[F]irst-party cases differ from third-party cases because, in a first-party action, the defendant insurance company owes the plaintiff-insured a duty of good faith."  *Sunahara v. State Farm Mut. Auto. Ins. Co.*, 280 P.3d 649, 657 (Colo. 2012).  The basis for liability is "'the insurer's conduct in unreasonably refusing to pay a claim and failing to act in good faith, not the insured's ultimate financial liability."  *Sanderson v. Am. Fam.*, 251 P.3d 1213, 1217 (Colo. App. 2010).  "Thus, the fact that an insurer eventually pays an insured's claim will not foreclose a lawsuit based on the insurer's conduct prior to payment."  *Id.* The inquiry is "whether reasonable jurors could conclude that in the investigation, evaluation, and processing of the claim, the insurer acted unreasonably. . . .'"  *Id.* at 1219 (quoting *Zilisch, v. State Farm Mut. Auto. Ins. Co.*, 995 P.2d 276, 280 (Ariz. 2000)).  The reasonableness of the insurer's conduct is viewed objectively.  *Id.* at 1217.

---

[6] UIM coverage is "for damage for bodily injury or death that an insured is legally entitled to collect from the owner or driver of an underinsured motor vehicle."  Colo. Rev. Stat. § 10-4-609(4).

**B.     Whether Plaintiff Has Sufficiently Averred Unreasonable Conduct**

State Farm argues that "Plaintiff seems to base her bad faith and unreasonable delay or denial claims solely on the premise that [State Farm] was obligated to issue payment to Plaintiff of its highest settlement offer of $6,844 to resolve her UIM claim, even though she did not accept this settlement offer." *Motion* [#28] at 5-6.  Additionally, it is argued that Plaintiff's allegations that State Farm's settlement offer constituted its evaluation of her claim and that it was required to pay this amount is contrary to Colorado law.  *Id.* at 6-8.    Finally, State Farm asserts that Plaintiff's allegations that it required Plaintiff to sign a release cannot plausibly support her claims, and that the remaining allegations in the Complaint are conclusory.  *Id.* at 8-11.

Plaintiff responds that State Farm mischaracterizes its failure to pay UIM benefits to Plaintiff 'as a mere dispute between her and the insurer about the total value of her claim . . . ."  *Response* [#37] at 1.  The "key basis" for Plaintiff's bad faith claims is that "State Farm knew that McKinney's claims were worth more than it had paid her yet [it] willfully withheld payment in an effort to extort a release of its own liability where it otherwise was not entitled to one."  *Id.* at 2, 4.  After more than six months of delay, State Farm, "for no reason other than it chose to, paid McKinney the $2,500 it had indicated it was willing to pay her as early as October 10, 2019.  *Id.*  Still, Plaintiff asserts that State Farm would not pay her the additional amounts above $2,500, "which she was patently owed, unless she agreed to sign a release."  *Id.*  Thus, Plaintiff argues that "[i]t was State Farm alone that was negotiating toward a resolution of the claim that would result in a release of its own liability that, but for its ability to withhold monies McKinney was due, it would have had no leverage to otherwise seek."  *Id.* at 4-5.  That is, according to Plaintiff,

8

"quintessential bad faith conduct." *Id.* at 5.  While the parties may not agree about the total amount of UIM benefits Plaintiff is owed, Plaintiff states that there is no dispute she is owed at least $6,844 per State's Farm's assessment.  *Id.* at 7.  Additionally, Plaintiff argues at a minimum that State Farm knew that it owed her at least $2,500 but delayed payment of that amount for no good reason.  *Id.*

Plaintiff's argument as stated in the Response [#37] initially boils down to the premise that Plaintiff and State Farm were not engaged in negotiations to resolve a disputed claim, but rather that State Farm had evaluated Plaintiff's case as being worth the highest amount offered in settlement, i.e., $6,844.  As State Farm did not pay Plaintiff that amount, and delayed in paying even the lesser amount, Plaintiff asserts that State Farm's conduct could be deemed to be unreasonable by a trier of fact.  However, State Farm asserts in its Reply [#40] that Plaintiff's allegations appear to be factually untrue and contradicted by Plaintiff's pre-suit communications to State Farm.  Thus, Plaintiff claims in her Response [#37] that State Farm made multiple settlement offers "without McKinney ever having made a counter-demand."  *Id.* at 4.  State Farm asserts from this that "Plaintiff would have the Court believe that State Farm was negotiating against itself, offering Plaintiff increasing amounts of money without any demands being made by Plaintiff, all with the intent to 'extort a release' from Plaintiff."  *See Reply* [#40] at 2.  In fact, State Farm notes that it "was engaged in a good faith negotiation with Plaintiff, who, through her attorneys, submitted not one, but five (5) counter-demands in response to offers made by State Farm."  *Id.*[7]  Moreover, Plaintiff explicitly acknowledged State Farm's

---

[7] As evidence of these counter-demands, State Farm attaches to its Reply [#40] Plaintiff's responses to State Farm's offers.  The Court finds that it can consider these documents without converting the motion to a motion for summary judgment because the Amended Complaint [#19] refers to Plaintiff's communications to State Farm in response to its offers.  *See id.* ¶¶ 24-28.

9

offer of $2,500 "in *settlement* of her UIM claim[,]" and stated that while she would not accept the "offer at this time, . . . she is willing to *negotiate* inside the policy limits to resolve her claim." [#40-1] at 1 (emphasis added). In that same communication, Plaintiff made a counter-demand of "$20,000 in settlement of her claim" and asked that if State Farm could not accept that offer, it should "propose an alternative settlement offer." *Id.*

Recognizing her mistake in stating that she did not make counter-demands to State Farm's "offers" in pre-litigation correspondence, Plaintiff retracted this statement in its Notice of Withdrawal [#41]. Plaintiff also retracted the following italicized language, "[r]elying on the predicate that the parties' exchanges pre-litigation were settlement negotiations—*a predicate that contradicts the allegations in McKinney's Amended Complaint*—State Farm contends that, not only is 'settlement authority' not reflective of a claim's worth, but it is also undiscoverable." *Id.*[8] From the foregoing, the Court first finds that Plaintiff does not and cannot dispute that she was engaging in settlement negotiations with State Farm, and that she made counter-demands in response to State Farm's increasing offers.

Plaintiff argues in her Surreply [#45] that two mistakenly erroneous parenthetical statements in her Response to State Farm's Motion [#28] do not alter her argument in opposition to dismissal. *Id.* at 1. Thus, she asserts that whether she engaged in settlement negotiations and made "counter-demands" does not change the fact that,

---

These communications are thus central to the Complaint as are State Farm's letters to Plaintiff, which the Court has previously said it would consider. Plaintiff has not disputed this or argued that the documents may not be considered in connection with the Motion [28].

[8] Plaintiff's counsel notes by way of explanation that she thought she had reviewed the complete communications between the parties, but that she was unaware of the pre-litigation correspondence that she was not a party to. *Id.*

ultimately, Plaintiff would not sign a release of State Farm's further obligation to her and, as a result, State Farm refused to pay her amounts that reflect at least a minimum value of Plaintiff's claim for UIM benefits. *Id.* at 1-2.[9]  Plaintiff asserts that it is at least plausible that State Farm did actually evaluate, or should have evaluated, Plaintiff's claim as being worth the amount that it "offered" to pay her.  In that case, Plaintiff asserts that she should be permitted to present to a jury her claim that, because State Farm knew that she was owed at least $6,844.00 on her UIM claim, it was unreasonable for it not to pay that amount to her.  *Response* [#37] at 9.  The issue then becomes whether this provides a plausible basis for a jury to find that State Farm's conduct was unreasonable.

The Court notes at the outset that it agrees with State Farm that Plaintiff's claimed medical injuries of $15,000, *Am. Compl.* [#19] ¶ 19, which it accepts as true and which Plaintiff has not disputed in her briefing, are well beneath the amount of her settlement with Ms. Johnson and Ms. Johnson's policy limits.  Thus, the remaining amounts claimed (including the remainder of Ms. Johnson's policy in excess of the economic damages and also the amounts claimed allegedly owed pursuant to State Farm's policy), can represent only non-economic damages.  *See Motion* [#28] at 5, 8.  While Plaintiff argues that there is no dispute that State Farm owes Plaintiff "*at least* $6,844.00]" (*Response* [#37] at 7), that issue is disputed and, in fact, is the central issue relevant to the Motion [#28].  At a minimum, Plaintiff asserts that State Farm knew that it owed her at least $2,500, but delayed payment of that sum for no good reason.  *Response* [#37] at 7-8.

---

[9] The Court notes that it has found no verification of this in the communications between the parties, as the letters do not reference a release or an objection thereto.  Nonetheless, the Court will accept as true for purposes of the Motion [#28] Plaintiff's allegations that she agreed to payment of $6,844 but would not sign a release, and that State Farm thus did not pay her the settlement amount.  *See Am. Compl.* [#19] ¶ 24.

Plaintiff cites *Carpenter v. American Family Mutual Insurance Co.*, No. 13-cv-1986-JLK, 2015 WL 8529775, at *2 (D. Colo. Dec. 11, 2015), in support of her argument that "a first-party insurer has no correlative right to condition payment of benefits to its own insured on a release of the insurer's liability, to the detriment of its insured." *Response* [#37] at 11.  In *Carpenter*, the insurer "never disputed" the insured's "serious injuries" and withheld payment of UIM benefits because the insured would not sign a release. *Id.* at *2.  Thus, the insurer refused to pay the plaintiff even the undisputed economic damages that were estimated at $155,000 "because she would not sign a release to forfeit the full value of her UIM policy benefits." *Id.*

Similarly, the Court notes that in *Hatfield v. Liberty Mut. Ins. Co.*, 98 F. App'x 789 (10th Cir. 2004), a case not cited by the parties, the Tenth Circuit held that it was bad faith for an insurer to withhold payment until a release was signed where the insurer did not dispute that an amount was due under the policy.  *Id.* at 794.  In that situation, "[a] reasonable jury could decide that Liberty Mutual's withholding of payment was little more than an effort to take advantage of an insured in need of proceeds rightfully due him, and that there was no 'legitimate dispute,' . . . to justify the failure to pay $25,000." *Id.* (quoting *Davis v. Mid-Century Ins. Co.*, 311 F.3d 1250, 1252 (10th Cir. 2002)).

Here, unlike *Carpenter* and *Hatfield*, Plaintiff had already been paid the undisputed amount that she was owed from her medical bills.  Plaintiff's assertion that State Farm had determined that Plaintiff was due the entire $6,844 or, at the very least, the $2500 that it offered Plaintiff as to her remaining damages is not plausible.  As previously noted, Plaintiff acknowledged that the amounts were offered by State Farm "in settlement" of Plaintiff's claim for such damages and as part of a negotiation.  Plaintiff does not dispute

12

that the amounts being negotiated were noneconomic damages. Unlike economic damages such as those associated with Plaintiff's medical bills, there is no sum certain that an insured is entitled to for noneconomic damages, and the parties' acknowledged negotiations to settle the claim are indicative of the fact that there was a "legitimate dispute" over the value of such damages. *See Davis*, 311 F.3d at 1252 (finding that the "'tort of bad faith does not prevent the insurer from resisting payment or resorting to a judicial forum to resolve a legitimate dispute.'")

In addition, under Colorado law, evaluations and settlement authority do not bind insurers to the amount offered, nor do they constitute an undisputed amount which must be paid under the policy. *Fisher I*, 419 P.3d at 988. Colorado law dictates further that "settlement authority does not constitute a 'final, objective assessment of a claims [sic] worth to which an insurer may be held'" and that "settlement authority reflect[s] the insurer's 'basic assessment of the value of a claim taking into consideration the likelihood of an adverse judgment, but do[es] not normally entail a thorough factual and legal evaluation when routinely made as a claim analysis.'" *Sunahara,* 280 P.3d at 656 (quoting *Silva v. Basin Western Inc.*, 47 P.3d 1184, 1190-91 (Colo. 2002)).

The Court has done its own research on this issue and finds a case from the Arizona Court of Appeals addressing similar circumstances to be persuasive. *See Voland v. Farmers Ins. Co. of Ariz.*, 943 P.2d 808 (Ariz. App. 1997). There, the insurance carriers offered to settle a UIM claim for $30,000, stating they felt that amount was "the fair value" of the claim. *Id.* at 810. The plaintiff responded that the $30,000 amount was "without foundation[,]" but demanded payment of that amount and stated that the parties could arbitrate the difference. *Id.* Plaintiff did not request that the carriers actually pay the

13

undisputed amount of economic damages in the form of medical bills and lost wages. *Id.* After the case went to arbitration, the plaintiff brought suit alleging that "the carriers acted in bad faith by withholding th[e $30,000] sum from her while the parties followed the policies' arbitration procedure to resolve their dispute about value, *or until she executed a release*." *Id.* at 810-11 (emphasis added). The court rejected the plaintiff's argument, finding it was "flawed." *Id.* at 811.

Thus, the *Voland* court stated that the carriers' statement that they considered the "fair value" of her claim to be $30,000 "does not mean they acknowledged that was 'the minimal amount the insurer's own adjuster ha[d] evaluated as being owed to the insured." 943 P.2d at 812. Rather, the court found that "the settlement offer was simply a proposal to compromise and resolve the claim, nothing more and nothing less. It represented the carriers' evaluation or best estimate, at that point in time, of what the trier (here, the arbitrators) might award." *Id.* The court held that the settlement offer did not bind the carriers and did not set a "'floor' on what the . . . carriers would ultimately have to pay." *Id.* In so holding, the court noted that "a personal injury claim is unique and generally not divisible or susceptible to relatively precise evaluation or calculation. *Id.* It stated that "[t]he 'pain and suffering'/general damage elements of a personal injury claim, for example, are inherently flexible and subject to differing and potentially changing evaluations based on various factors. *Id.* at 812-13. Finally, the *Voland* court stated:

> If, in order to avoid a bad faith claim, UM carriers were obligated to pay the amount of their lowest settlement offer without obtaining any release and before any arbitration hearing or award, they would have little if any incentive to settle. Imposing such a requirement would have a chilling effect on genuine settlement evaluations and negotiations. The effect would be to deter settlement and foster litigation, whereas our system of justice encourages settlement and discourages litigation.

*Id.* at 812.

14

In this case, unlike *Voland*, State Farm did not even make a representation of the "fair value" of the claim, simply making settlement offers to Plaintiff. Again, the settlement offers related to noneconomic damages, as Plaintiff's economic damages had already been paid by Geico, Ms. Johnson's insurer. Such damages are not susceptible to a precise evaluation. *Voland*, 943 P.2d at 812. In that circumstance, as in *Voland*, the settlement offers did not set a "floor" on what State Farm was required to pay and did not constitute a binding admission of the value that State Farm put on the claim. Accordingly, the Court finds that Plaintiff's allegations that State Farm's conduct was unreasonable, as required as an element of her bad faith claims, are not plausible.

This finding is particularly apposite in this case given State Farm's payment of $2,500 to Plaintiff after its failed effort to settle combined with its repeated statements in making its settlement offers that it would consider "any new or additional information" to "assist [it] in the evaluation of the claim." [#28-1] at 16; *see also* 2-3, 5, 6, 12, 13, 14. Furthermore, State Farm indicated that the payment of $2,500 tendered to Plaintiff was made after reaching an "impasse" on "efforts to resolve this claim through negotiation" and after not receiving counter demands to some of its offers. [#28-1] at 6. State Farm also made clear in that communication that the $2,500 payment did not prejudice Plaintiff's "right to receive a higher amount in the future through continuing negotiation or alternative means of resolution" and that "[t]he claim remains open subject to a final determination of damages" if Plaintiff wished to discuss the matter further or provide any new information. *Id.*; *see also* [#28-1] at 8 (noting the dispute was over "the value of the claim[,]" that State Farm is not refusing to pay Plaintiff anything she owed, and that State Farm "hope[s] we can continue discussions to reach an amicable resolution"). As in

15

*Voland*, the offers represented State Farm's "evaluation or best estimate, at that point in time" of the value of the claim, subject to any new information provided by Plaintiff that might affect that value, and State Farm was open to paying Plaintiff additional damages if she properly supported them. In these circumstances and under the foregoing authority, a reasonable jury could not find that State Farm's conduct was unreasonable.

Plaintiff attempts, however, in her Notice of Supplemental Information [#48], to shore up her argument. Plaintiff attaches State Farm's Auto Injury Evaluation obtained in discovery to show that State Farm did actually "evaluate Plaintiff's claim as being $6,844.00." *See* [#48-1] at 4 (stating the "Net Evaluation Range" is a low of $0 to a high of $6,844, mirroring State Farm's highest settlement offer); *see also* Notice of Supplemental Information [#48] at 2. This argument must be rejected for two reasons. First, this Evaluation is a document outside the pleadings that is not properly considered under Rule 12(b)(6), and Plaintiff has not shown that any exceptions exist to permit the Court to consider it. Second, even if the Court were to find an exception applicable and consider the document, an insurer's evaluation of a claim at any particular time does not constitute an undisputed amount which must be paid under the policy. *Fisher I*, 419 P.3d at 988; *Voland*, 943 P.2d at 812. And the evaluation shows a low range of value of $0, meaning that State Farm's payment of $2,500 is well within the range ($0 to $6,844) of the alleged evaluation of the claim.

Finally, Plaintiff's argument that State Farm "delayed" in paying her its initial $2,500 settlement offer is rejected as contrary to Colorado law. The *Fisher I* Court made it clear that an insurer has no obligation to issue payment in the amount of an initial settlement offer. *Fisher I*, 419 P.3d at 988 ("State Farm is correct that an assertion that it breached

16

its duty under section 10-3-1115 by failing to pay Fisher the initial settlement offer is inconsistent with Colorado law); *see also Voland*, 934 P.2d at 811-13. Defendant issued the $2,500 payment to Plaintiff as soon as it became clear that the parties had reached an impasse in their settlement negotiations. [#28-1] at 6. Until that point, Defendant was plainly under the impression that Plaintiff was open to continuing the negotiation and was asking for a counter demand or any new information. *Id.* at 8, 10, 12.

Accordingly, the Court **recommends** that the Motion [#28] be **granted** as to second and third claims for relief alleging common law and statutory bad faith.

### C. Request to Strike Extortion Allegations

The Court next turns to the portion of State Farm's Motion [#28] seeking to strike portions of the Amended Complaint [#19] under Fed. R. Civ. P. 12(f). Rule 12(f) permits the Court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." "The rule's purpose is to conserve time and resources by avoiding litigation of issues which will not affect the outcome of a case." *Sierra Club v. Tri-State Generation & Transmission Ass'n*, 173 F.R.D. 275, 285 (D. Colo. 1997) (citing *United States v. Smuggler-Durant Mining Corp.*, 823 F. Supp. 873, 875 (D. Colo. 1993)); *see also RTC v. Schonacher*, 844 F. Supp. 689, 691 (D. Kan. 1994) (stating that Rule 12(f)'s purpose "is to minimize delay, prejudice, and confusion by narrowing the issues for discovery and trial").

However, motions to strike are disfavored and will only be granted under the rarest of circumstances. *Sierra Club*, 173 F.R.D. at 285. As such, the moving party's "burden of proof is a heavy one." *Holzberline v. OM Fin. Life Ins. Co.*, No. 08-cv-02053-LTB, 2008 WL 5381503, at *1 (D. Colo. Dec. 22, 2008). Thus, "[e]ven where the challenged

allegations fall within the categories set forth in the rule, a party must usually make a showing of prejudice before the court will grant a motion to strike." *Sierra Club*, 173 F.R.D. at 285. Moreover, regardless of whether the moving party has met its burden to prove that allegations contained in a pleading violate Rule 12(f), discretion remains with the Court to grant or deny the motion. *See* Fed. R. Civ. P. 12(f) (stating that allegations which are subject to Rule 12(f) "may" be stricken).

Here, State Farm does not meet its heavy burden. The Court has reviewed the portions of the Amended Complaint [#19] to which State Farm refers. *See Motion* [#28] at 11-13; *see also Am. Compl.* [#19] ¶¶ 31, 33. State Farm argues that there is no factual basis for what it considers an allegation of extortion, and therefore the "allegations are both immaterial and impertinent." *Motion* [#28] at 13. State Farm argues further that these allegations are "[b]aseless" and "degrade Defendant's moral character." *Id.* The Court finds that State Farm has overstated Plaintiffs allegations in her Amended Complaint [#19]. While the statements may not be flattering to State Farm, such is the nature of many lawsuits, and, absent abuse, Plaintiff is permitted to make factual *allegations* in support of her claim. Finally, Defendant fails to allege with any specificity that it will suffer prejudice if the portions of the Amended Complaint [#19] it identifies are not stricken.

## IV. Conclusion

Based on the foregoing reasons,

IT IS HEREBY **RECOMMENDED** that the Motion [#28] be **GRANTED IN PART AND DENIED IN PART.** Specifically, it is recommended that the Motion [#28] be **GRANTED** as to the merits, and that Plaintiff's second and third claims be **DISMISSED**.

It is recommended that the Motion [#28] be **DENIED** as to the motion to strike allegations pursuant to Fed. R. Civ. P. 12(f).

IT IS HEREBY **ORDERED** that pursuant to Fed. R. Civ. P. 72, the parties shall have fourteen (14) days after service of this Recommendation to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned. A party's failure to serve and file specific, written objections waives de novo review of the Recommendation by the District Judge, Fed. R. Civ. P. 72(b); *Thomas v. Arn*, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions. *Makin v. Colo. Dep't of Corr.*, 183 F.3d 1205, 1210 (10th Cir. 1999); *Talley v. Hesse*, 91 F.3d 1411, 1412-13 (10th Cir. 1996). A party's objections to this Recommendation must be both timely and specific to preserve an issue for de novo review by the District Court or for appellate review. *United States v. One Parcel of Real Prop.*, 73 F.3d 1057, 1060 (10th Cir. 1996).

Dated: February 16, 2021

BY THE COURT:

Kristen L. Mix
United States Magistrate Judge